Cross v. Hodges.

No. 27,679.

JAMES R. CROSS and EMMETT S. SCOTT BALLARD, by His Guardian, CHARLES C. HOGE, et al., *Appellees*, v. FRANK HODGES, *Appellant*.

(261 Pac. 585.)

SYLLABUS BY THE COURT.

1. SPECIFIC PERFORMANCE—*Marketable Title—Questions Properly Adjudicated.* In an action for specific performance of a contract for the purchase and sale of real estate, the record examined, and *held*, that the plaintiff vendors tendered a good and merchantable title to the defendant vendee, and that the latter's objections to the title had been effectively disposed of in prior litigation where the questions of law and fact raised by defendant's objections had been properly drawn in question and adjudicated, and in which judgment also the interests of all concerned in the property had been defined, determined, and concluded.

2. JUDGMENTS—*Res Judicata—Conclusiveness of Adjudication.* Where the interpretation of a will was properly drawn in question, the judgment of a district court of competent jurisdiction, whether correct or not, is a finality—where all parties concerned in the will and in the judgment were properly impleaded, and where no appeal was taken from that judgment within the time allowed therefor by the code of civil procedure.

Appeal from Johnson district court; JABEZ O. RANKIN, judge. Opinion filed December 10, 1927. Affirmed.

*S. D. Scott*, of Olathe, for the appellant.

*Louis R. Gates*, of Kansas City, *Charles C. Hoge* and *C. B. Little*, both of Olathe, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action to compel specific performance of a contract for the purchase and sale of real estate; in effect, a suit by the vendors for the purchase money and a defense by the vendee grounded on his contention that the plaintiffs could not and did not furnish him with a good and merchantable title to the property.

It appears that on and prior to the death of one James W. Cross, which occurred on August 30, 1907, he was seized in fee simple of a certain eighty-acre tract of land, to wit: S. ½, SE. ¼, 8-12-25 east, in Mission township, Johnson county, Kansas, of which township and county Cross was a resident and in which he died testate.

By the terms of his will, Cross devised to his second wife, Sarah

Jane Cross, a life estate in this eighty acres with remainder to his three children by his first wife, James, Charles and Letha, share and share alike, with certain qualifications of more or less significance which will require two paragraphs of the will to be set out verbatim:

"Third: I give, devise and bequeath to my wife, Sarah Jane Cross, a life estate in all the real property of which I may die seized, said life estate to be without the power of sale. That is to say, I give and bequeath and devise to my wife the use and occupation of all my lands, tenements and hereditaments, without the power of sale to the end of her natural life, or so long as she may live, with the remainder in fee to said real property to my three children, here-inafter named, or their issue, at my wife's decease when her life estate shall have determined, subject to the conditions hereinafter named.

"Fourth: I give, devise and bequeath to my three children, James R. Cross, Letha N. Cross and Charles E. Cross, to be divided equally among them, share and share alike, all the real property of which I may die seized, subject to the life estate in same, hereinbefore devised and bequeathed to my wife, Sarah Jane Cross. The said lands to be held intact and undivided until my wife, Sarah Jane Cross's decease and until my youngest living child has attained his or her majority, at which time said real estate may be divided or sold and each of my said children or his or her issue come into possession of his own. Should one of my children die without leaving issue, then said property shall be divided equally between the surviving two. Should two of my said children die without leaving issue, then said property shall fall to the remaining one. Should any of my said children die leaving issue, then said issue should take said child's part."

With the lapse of years, James, Charles and their sister Letha attained their majority. Later, on July 14, 1914, James borrowed $1,000 from one John G. Sheldon, and to evidence and secure its repayment, James, Charles and Letha executed to Sheldon their note and a mortgage on the undivided one-third remainder interest in this eighty acres vested in James by their father's will. On September 1, 1918, James borrowed a further sum of $1,650 from Chris Yoos, Jr., and gave the latter a similar mortgage on his interest in the same property.

On October 3, 1917, Letha borrowed $750 from Sheldon, and she and her two brothers executed to him a mortgage on her one-third interest in the eighty acres to secure its repayment.

On January 28, 1923, Charles borrowed $407.35 from one G. A. Burgdorfer, and mortgaged his one-third interest in the remainder estate to secure its repayment.

Meantime, Sarah Jane Cross, life tenant of the eighty acres, mar-

ried a man named Ballard, who later died. She therefore appears in this record as Sarah J. Ballard. Letha married and divorced a man named Scott, and later she died intestate, leaving as her sole heir a son of tender years, Emmett S. Scott Ballard, who has been adopted by Sarah, his step-grandmother.

Sarah, the life tenant, expended several thousand dollars on permanent improvements, but meantime the taxes on the property fell in arrears, and default in payment of principal and interest on their borrowings was made by James, Charles and Letha.

Foreclosure proceedings were instituted by Sheldon; all the parties concerned in the property, including the other mortgagees Yoos and Burgdorfer, were properly impleaded; Letha's infant son was represented by a guardian of his estate; the construction of the testator's will was properly drawn in question; and the trial court held:

"The court further finds that the defendants, James R. Cross; Charles E. Cross; Charles C. Hodge, administrator of the estate of Letha N. Scott, deceased; Emmett S. Scott Ballard, a minor, and Sarah J. Ballard have in their answers filed herein asked the court to interpret and construe the provisions of the last will and testament of the said James W. Cross, and to ascertain and determine the right, title, interest and estate of said defendants in said real property devised under the will of the said James W. Cross, and the court finds that said will should be interpreted and construed by the court, and finds that by the terms of said will the title to said real property described in said will, at the time of the death of the testator, James W. Cross, vested in remainder in his three children, in fee simple, namely, James R. Cross, Letha N. Cross, now Letha N. Scott, deceased, and Charles E. Cross, to be divided equally among them share and share alike, subject to the life estate therein devised to the said widow, Sarah Jane Cross, now Sarah Jane Ballard; that the clauses in said will which provide that 'should one of the children of the testator die without leaving issue then the property should be divided equally between the surviving two; if two of them die without leaving issue then the property should fall to the remaining one,' means the death of said children in the lifetime of the testator; that the clauses contained in said will which refer to the restriction of the right of the widow, Sarah Jane Cross, now Sarah Jane Ballard, to alienate or sell her life estate in said real property are void; that all of the said children of said deceased, and who are devisees under the will of said James W. Cross, reached their age of majority several years prior to the date of the commencement of this action, and that it was not the intention of the testator that said land should be held intact and undivided after his youngest child mentioned in said will had attained his or her majority, and until the death of the widow and even with consent of the widow it could not be disposed of until the youngest child became of age, but with her con-

sent it might be disposed of after the youngest child became of age and before the death of the widow."

Foreclosure of the mortgages was decreed, a lien declared in favor of Sarah for the improvements and that lien foreclosed, priorities declared and the eighty acres ordered sold to satisfy this judgment, which was rendered on March 29, 1926.

On July 3, 1926, Sarah, James, Charles and the boy Emmett, son of the deceased Letha, by his guardian, who had duly obtained the approval and sanction of the probate court thereto, made a contract to sell this eighty acres in question to the defendant Frank Hodges. The agreed price was $32,000. Hodges paid $5,000 in cash and agreed to satisfy all the judgments and liens then incumbering the property and pay over to the vendors the balance of the purchase price. The contract of sale also provided that the vendors were to deliver to Hodges an abstract showing a good and merchantable title in the vendors subject to the judgment in foreclosure outlined above.

Pursuant thereto the plaintiff vendors executed and tendered to Hodges a deed of general warranty, thus combining and conveying the interest of the life tenant and the several interests of the remaindermen. The abstract showed good title in the testator James W. Cross, and the devolution of the property to the vendors, Sarah, James and Charles by virtue of the will, and to the boy Emmett as sole heir of Letha, deceased intestate. Hodges' objections to the title were based on the limitation imposed by the will on the right of Sarah to sell her interest in the property; and that James, Charles and Letha had only a contingent interest in the property not subject to alienation because of the possibility that they or some of them might die without issue prior to the death of Sarah, the stepmother and life tenant; and that there could be no certainty as to the absolute disposition of the remainder estate until the death of Sarah, under the rule announced in *Purl v. Purl,* 108 Kan. 673, 197 Pac. 185.

The trial court held that these objections to the title were without merit; that the interpretation of the testator's will had been properly in issue in the foreclosure suit and the interests of the remaindermen James, Charles and Letha had been ascertained and adjudicated therein; likewise that the limitation imposed by the will upon Sarah's right to sell her life interest had been properly and conclu-

sively adjudged to be void in that suit; and that all parties having any possible interest in the property had been given their day in court, and that the judgment in the foreclosure suit with all its incidents and consequences was a finality.

It has taken some space to state this case, but with that done there remains nothing to discuss. Whether the judgment construing the will was correct or not, it was not appealed from, and consequently in six months after its rendition (September 29, 1926) it became binding on all concerned. (R. S. 60-3309.) And since everybody who could possibly have had a claim on this eighty acres of land was impleaded and bound by the judgment, the court's adjudication of the rights of the widow, the children and the grandchild, as well as the mortgagees and judgment creditors, is *res judicata.* Defendant, of course, was not bound by the judgment in the prior litigation, but all the vendors were effectively bound thereby. They are the only parties in existence who have any concern with this property and who, if not bound by that judgment, might call in question the character of the devise to James, Charles and Letha, or their right to mortgage their interest before the death of Sarah, or the validity of a sale by Sarah of her life interest. The result is the plaintiff vendors tendered to the defendant a good and merchantable title and the judgment of the district court is affirmed.